**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

K. CLARK, both individually and as
representative of the proposed
class,

    *Plaintiff-Appellant,*

   v.

TIME WARNER CABLE, a
corporation,

    *Defendant-Appellee.*

No. 07-55794

D.C. No.
CV-07-01797-VBF

OPINION

Appeal from the United States District Court
for the Central District of California
Valerie Baker Fairbank, District Judge, Presiding

Submitted February 6, 2008*
Pasadena, California

Filed April 30, 2008

Before: Alex Kozinski, Chief Judge,
Diarmuid F. O'Scannlain, and William A. Fletcher,
Circuit Judges.

Opinion by Judge O'Scannlain

---

*The panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

## COUNSEL

Stephen Yagman, Yagman & Yagman & Reichmann, Venice Beach, California, filed briefs for the plaintiff-appellant; Marion R. Yagman and Joseph Reichmann, Yagman & Yagman & Reichmann, Venice Beach, California, were on the briefs.

Bryan A. Merryman, White & Case LLP, Los Angeles, California, filed a brief for the defendant-appellee; Travers D. Wood and Patrick O. Hunnius, White & Case LLP, Los Angeles, California, and Matthew A. Brill, Latham & Watkins LLP, Washington, D.C., were on the brief.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether the doctrine of primary jurisdiction permits a district court to refer a claim raising a novel and technical question of federal telecommunications policy to the Federal Communications Commission for its consideration in the first instance.

I

Time Warner Cable ("TWC") is one of the largest cable operators in the United States. Among other products and services, TWC markets "Digital Phone," a bundle of local and long distance calling services that utilize Voice over Internet Protocol ("VoIP") technology. VoIP uses the Internet to transmit telephone signals rather than using the traditional public switched telephone network ("PSTN"). As such, VoIP has the capacity to transmit voice and data streams simultaneously, whereas PSTN-based connections only have the capacity to transmit one signal at a time.

Appellant K. Clark maintained two separate PSTN phone lines in her home, one serviced by Vonage, the other serviced by Verizon. On February 24, 2007, Clark received a telephone call from a TWC sales representative soliciting her to switch over to TWC's Digital Phone package. Clark, initially intrigued, conversed with the salesperson, who at one point indicated that Digital Phone offered a six-hour backup that would allow Clark to continue making calls and to dial 9-1-1 in the event her cable was disconnected. Clark was later transferred to a second sales representative who corrected the false assertion made by the first, explaining to Clark that Digital Phone did not offer any backup system at all. In response to this news, Clark informed the sales representative that she was not interested in TWC's service and hung up the phone.

TWC apparently misunderstood Clark's statement. On Thursday, March 8, 2007, the company disconnected Clark's Vonage and Verizon telephone service and dispatched a technician to her home to install a TWC cable line. When the technician arrived at her door, Clark immediately informed him that she was not interested in TWC's service, and that she had not authorized the switch. The technician told Clark to contact TWC to resolve the problem and, according to Clark, confusion ensued.

Clark alleges that she made multiple calls to TWC, was continuously placed on hold, and was promised technicians to restore her Vonage and Verizon service who never arrived. She further contends that she was without any telephone service from March 8 until March 16, 2007, when only one of her telephone lines was reconnected.

On March 19, 2007, Clark filed a complaint against TWC in the District Court for the Central District of California on behalf of herself and those similarly situated. Her complaint alleged that TWC violated 47 U.S.C. § 258(a), the federal prohibition on "slamming"—the practice in which a telecommunications carrier switches a consumer's telephone service without the consumer's consent. In addition, her complaint alleged that TWC violated California state law's prohibition of the same conduct, Cal. Pub. Util. Code section 2889.5, and the federal Racketeer Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. § 1962. Finally, Clark pled causes of action for fraud, fraudulent concealment, and negligence.

Upon TWC's motion, the district court dismissed Clark's complaint without prejudice. Noting that § 258(a) applies only to "telecommunications carriers," and that the question of whether a VoIP provider meets this definition has never been resolved, the district court referred Clark's § 258(a) claim to the Federal Communications Commission ("FCC") to consider the matter in the first instance.

The district court further concluded that its referral of Clark's § 258(a) claim to the FCC warranted a dismissal without prejudice of her remaining claims. In the alternative, it dismissed all such claims for failure to state a claim upon which relief could be granted. *See* Fed. R. Civ. P. 12(b)(6). This appeal followed.[1]

II

A

[1] The Telecommunications Act of 1996 (the "Act") imposes a variety of obligations on telecommunications carriers. The FCC is charged with the Act's administration, along with the administration of its predecessor, the Federal Communications Act of 1934. 47 U.S.C. §§ 151, 154. Among other things, the Act includes a prohibition on "slamming." Section 258(a) provides that "[n]o *telecommunications carrier* shall submit or execute a change in a subscriber's selection of a provider of telephone exchange service or telephone toll service *except* in accordance with such verification procedures as the [FCC] shall prescribe." *Id.* § 258(a) (emphasis added). In addition, § 258(b) authorizes the FCC to prescribe procedures for the award of damages when the verification procedures in § 258(a) are violated. Under this delegation of authority, the FCC established detailed and comprehensive procedures which telecommunications carriers must follow to verify a subscriber's consent to a carrier change,[2] and established the penalties for violations.[3]

---

[1]In a concurrently filed memorandum disposition, we address Clark's petition for a writ of mandamus arising from the same district court decision. *See Clark v. U.S. Dist. Court*, No. 07-72899 (9th Cir. April 30, 2008).

[2]While the particular procedures that are required vary depending on how the telecommunications carrier markets its services, FCC regulations require all carriers to confirm a subscriber's change order, either by signature, voice recording, or by an independent third party. 47 C.F.R. § 64.1120(a)(1), (c)(1)-(3).

[3]FCC regulations impose liability on carriers who violate § 258(a), 47 C.F.R. § 64.1140, and set forth detailed procedures for resolving unauthorized changes, *id.* § 64.1150-64.1160, and for reimbursing aggrieved subscribers, *id.* § 64.1170.

**[2]** The emergence of VoIP technology created new challenges for the FCC, however, as existing regulations did not contemplate the revolutionary changes IP-enabled services entailed. Accordingly, the FCC issued a Notice of Proposed Rulemaking seeking comment on how to define and to regulate all IP-enabled services, including VoIP, while maintaining its "established policy of minimal regulation of the Internet and the services provided over it." *In re IP-Enabled Services*, 19 F.C.C.R. 4863, 4865 ¶ 2 (2004) (footnote omitted). The Notice posed two specific questions relevant to Clark's § 258(a) claim against TWC. First, it solicited comment on whether VoIP services should be classified as "telecommunications services"[4] or "information services"[5] under the Act. *In re IP*, 19 F.C.C.R. at 4880-81 26-27, *id.* at 4886 ¶ 35. Second, the FCC solicited comment on whether § 258(a)'s anti-slamming provision should apply to VoIP providers *regardless* of their statutory classification. *Id.* at 4910-11 72.[6]

---

[4]The Act defines "telecommunications service" as "the offering of telecommunications for a fee directly to the public, or to such classes of users as to be effectively available to the public, regardless of the facilities used." 47 U.S.C. § 153(46).

[5]The Act defines "information service" as "the offering of a capability for generating, acquiring, storing, transforming, processing, retrieving, utilizing, or making available information via telecommunications, and includes electronic publishing, but does not include any use of any such capability for the management, control, or operation of a telecommunications system or the management of a telecommunications service." *Id.* § 153(20).

[6]As a matter of first impression, the second question may not seem relevant in light of the first. Because § 258(a) only applies to "telecommunications carriers," classifying VoIP as an "information service" would exempt VoIP providers from the statute's reach. Importantly, however, the Act provides the FCC with the ancillary jurisdiction to extend requirements the Act imposes on telecommunications carriers to information service providers as well. *See In re IP*, 19 F.C.C.R. at 4881 ¶ 27. The Act also grants the FCC the authority to forbear from regulating telecommunications carriers in certain circumstances. *See* 47 U.S.C. § 160. Thus, whether the FCC classifies VoIP as a "telecommunications service" or an "information service" may not completely answer the question of how it will regulate such technology under § 258(a) or any other provision.

The district court determined that Clark's § 258(a) claim against TWC could not be resolved without first deciding whether that statute applies to VoIP providers. Recognizing that such question fell within the FCC's rulemaking authority and recognizing that its own decision could jeopardize the uniform administration of the FCC's regulatory scheme, the district court invoked the primary jurisdiction doctrine to refer Clark's claim to the FCC.[7]

## B

**[3]** The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency. A court's invocation of the doctrine does not indicate that it lacks jurisdiction. *Reiter v. Cooper*, 507 U.S. 258, 268-69 (1993). Rather, the doctrine is a "prudential" one, under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch. *See Syntek*, 307 F.3d at 780.

**[4]** Primary jurisdiction applies in a limited set of circumstances. As we explained in *Brown v. MCI Worldcom Network Servs.*, 277 F.3d 1166 (9th Cir. 2002), the doctrine is not designed to "secure expert advice" from agencies "every time a court is presented with an issue conceivably within the agency's ambit." *Id.* at 1172 (internal quotation marks and

---

[7]In reviewing the district court's decision, we note that no court of appeals has considered the question of whether § 258 vests subscribers with a private right of action. Because we conclude that the primary jurisdiction issue is dispositive, we do not address that question here. *See Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775, 782 (9th Cir. 2002) (declining to decide "whether a private right of action exists for cancellation of a copyright registration" where the court referred the case under the primary jurisdiction doctrine).

citation omitted). Instead, it is to be used only if a claim "requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency," *id.* (citing *Tex. & Pac. Ry. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 442 (1907)), and if " 'protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme,' " *id.* (quoting *United States v. Gen. Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987)).[8]

**[5]** When a district court determines that primary jurisdiction applies, it enables a "referral" of the issue to the relevant agency.[9] *Reiter*, 507 U.S. at 268. In practice, this means that the court either stays proceedings or dismisses the case without prejudice, so that the parties may seek an administrative ruling. *Syntek*, 307 F.3d at 782 n.3 (citation omitted). "[T]here is no formal transfer mechanism between the courts and the agency"; rather, the parties are responsible for initiating administrative proceedings themselves. *Id.*

### C

Although "[n]o fixed formula exists for applying the doctrine of primary jurisdiction," *Davel Commc'ns, Inc. v. Quest Corp.*, 460 F.3d 1075, 1086 (9th Cir. 2006) (internal quotation marks and citation omitted), we have traditionally examined the factors set forth in *General Dynamics*, and held that the doctrine applies in cases where there is: "(1) [a] need to resolve an issue that (2) has been placed by Congress within

---

[8]As such, the doctrine is distinct from administrative exhaustion, which prevents a federal court from exercising jurisdiction over a claim until all required administrative remedies have been pursued. *See Syntek*, 307 F.3d at 780-81.

[9]As the Supreme Court has explained, "referral" is perhaps not the most accurate term to describe this process, as most statutes do not authorize courts to *require* an agency to issue a ruling. *See Reiter*, 507 U.S. at 268 n.3. Rather, the court merely stays or dismisses proceedings to allow the plaintiff to pursue administrative remedies. *Id.*

the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration," *Syntek*, 307 F.3d at 781 (citing *Gen. Dynamics*, 828 F.2d at 1362). In considering these factors, we have previously explained that the primary jurisdiction doctrine is designed to protect agencies possessing "quasi-legislative powers" and that are "actively involved in the administration of regulatory statutes." *Gen. Dynamics*, 828 F.2d at 1365. Charged with the administration of the Telecommunications and Federal Communications Acts, the FCC is such an agency. *See* 47 U.S.C. §§ 151, 154.

**[6]** In addition, Congress has specifically delegated responsibility to the FCC to define "slamming" violations, *see* 47 U.S.C. § 258(a), and to prescribe the procedures for imposing the appropriate penalties, *see id.* § 258(b). The question raised by Clark's complaint—whether a VoIP provider qualifies as a "telecommunications carrier" or is otherwise subject to § 258(a)'s requirements—fits squarely within that delegation, particularly because the FCC has already developed a detailed and comprehensive regulatory scheme in response to the statute's instructions.

**[7]** We need not determine whether the existence of this scheme alone would warrant the referral to the FCC of a § 258(a) claim that raises no particularly novel issues, as Clark's claim raises a question of first impression. Moreover, the FCC's Notice of Proposed Rulemaking demonstrates that the agency is actively considering how it will regulate VoIP services and that the agency's development of a uniform regulatory framework to confront this emerging technology is important to federal telecommunications policy. We have previously approved of the use of the primary jurisdiction doctrine where it is unclear whether a federal statute applies to a new technology. *See Syntek*, 307 F.3d at 781-82 (referring a claim to the Registrar of Copyrights where it presented an

issue of first impression as to "whether decompiled object code qualifies for registration as source code under the Copyright Act and regulations" and where the issue was one "Congress has committed to the Registrar of Copyrights"). Faced with such question here, we conclude that the primary jurisdiction doctrine provided the district court with the authority to refer Clark's claim to the FCC.

### III

We next turn to Clark's remaining claims, each of which the district court dismissed without prejudice for failure to state a claim upon which relief could be granted. *See* Fed R. Civ. P. 12(b)(6). We conclude that the district court's decision was not an abuse of discretion.

**[8]** Clark contends that TWC's activities violated the federal RICO statute. To state a RICO claim, one must allege a "pattern" of racketeering activity, which requires at least two predicate acts. 18 U.S.C. §§ 1961(5), 1962(c); *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004). Clark contends that TWC's attempt to switch her service to its Digital Phone package constituted wire fraud. While wire fraud is a cognizable RICO predicate, *see* 18 U.S.C. § 1961(1), Clark alleges no additional predicate act. Accordingly, she has failed to allege the pattern necessary to state a RICO claim.

**[9]** Clark also contends that TWC is liable for fraud based on its salesperson's misrepresentation that TWC's Digital Phone Service offered a six-hour backup and the ability to dial 9-1-1 in the event a subscriber's cable was disconnected. Detrimental reliance is an essential element of a claim for fraud under California state law. *See Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1156 n.3 (9th Cir. 2000) (citing Witkin, Summary of California Law §§ 676-77, at 778-79 (9th ed. 1998)). According to Clark's complaint, the salesperson's false statement was corrected by the very next salesperson Clark spoke with. Clark never had the opportunity to act

on the misrepresentation and, as such, failed to allege that she suffered any detrimental reliance.

Finally, we deem Clark's state law claims for fraudulent concealment and negligence and her claim under Cal. Pub. Util. Code section 2889.5 waived for purposes of this appeal. This court "will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief," *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (internal quotation marks and citation omitted), and we decline to do so here.

## IV

Based on the foregoing, the district court's decision to dismiss Clark's complaint without prejudice is

**AFFIRMED.**