Susan IVIE, individually and on behalf of all others similarly situated,
Plaintiff,

v.

KRAFT FOODS GLOBAL, INC., Cadbury Adams USA LLC, and Back to Nature Food Company, Defendants.

CASE NO. C–12–02554–RMW

United States District Court,
N.D. California,
San Jose Division.

June 28, 2013

Ben F. Pierce Gore, Pratt & Associates, San Jose, CA, Gene M. Zona Jones, Provost Umphrey Law Firm, LLP, Beaumont, TX, Richard Barrett, Law Offices of Richard R. Barrett, PLLC, David Shelton, Oxford, MS, for Plaintiff

Dean N. Panos, Jenner and Block LLP, Chicago, IL, Kenneth Kiyul Lee, Jenner & Block LLP, Los Angeles, CA, for Defendants

## ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

### [Re Docket No. 56]

Ronald M. Whyte, United States District Court Judge

Plaintiff alleges that defendants Kraft Foods Global, Inc., Cadbury Adams USA LLC, and Back to Nature Food Company (collectively "defendants") violate California's unfair completion law, Cal. Bus. & Prof.Code §§ 17200 *et seq.* ("UCL") (counts 1–3), fair advertising law, *id.* § 17500 *et seq.* ("FAL") (counts 4–5), and Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA") (count 6). Second Amended Compl. ("SAC"), Dkt. No. 53. The laws alleged to be violated as a predicate for the "unlawful" prong of plaintiff's UCL claim include provisions of the state Sherman Food, Drug, and Cosmetic Law, California Health & Safety Code § 109875 *et seq.* ("Sherman Laws"). On February 25, 2013 the court dismissed all of plaintiff's claims based on restitution, the Song–Beverly Consumer Warranty Act, and the Magnuson–Moss Warranty Act with prejudice, and some of plaintiff's UCL, FAL, and CLRA claims with leave to amend. Dkt. No. 49. The SAC (1) amends the previously dismissed UCL, FAL, and CLRA claims based on allegedly unlawful or deceptive labels and (2) adds a host of new claims based on defendants' unpurchased products that bear the same or similar labels as those that plaintiff purchased. Defendants move to dismiss the amended claims, the new claims based on products that plaintiff did not herself purchase, and plaintiff's claims based on certain statements plaintiff allegedly viewed on defendants' website only. Having considered the arguments of the parties, and for the reasons set forth below, this court GRANTS–IN–PART and DENIES–IN–PART defendants' motion to dismiss.

## I. BACKGROUND

### A. Statutory and Regulatory Framework

In 1938, Congress enacted the Federal Food, Drug, and Cosmetic Act ("FDCA"), codified at 21 U.S.C. § 301 *et seq.* "The [FDCA] gives the [United States Food and Drug Administration ("FDA")] the responsibility to protect the public health by ensuring that 'foods are safe, wholesome, sanitary, and properly labeled,' 21 U.S.C. § 393(b)(2)(A), and the FDA has promulgated regulations pursuant to this authority, *see, e.g.,* 21 C.F.R. § 101.1 *et seq.*" *Lockwood v. Conagra Foods, Inc.,* 597 F.Supp.2d 1028, 1030 (N.D.Cal.2009). "There is no private right of action under the FDCA." *Id.* (citing *Merrell Dow Pharms., Inc. v. Thompson,* 478 U.S. 804, 810, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986)). Rather, "the FDA enforces the FDCA and its regulations through administrative proceedings." *Id.*

In 1990, Congress enacted the Nutrition Labeling and Education Act ("NLEA"), codified in scattered sections of 21 U.S.C., amending the FDCA. "The NLEA aimed to 'clarify and ... strength-

en the [FDA's] authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods.'" *Chacanaca v. Quaker Oats Co.*, 752 F.Supp.2d 1111, 1116 (N.D.Cal.2010) (quoting H.R.Rep. No. 101–538, at 7 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3336, 3337). For example, 21 U.S.C. § 343 provides that a "food shall be deemed misbranded" if, *inter alia*, it contains a "false or misleading label," § 343(a); if information required on the label is "not prominently placed" on the label in comparison with other words, § 343(f); if it "bears or contains any artificial flavoring, artificial coloring, or chemical preservative" without "bear[ing] labeling stating that fact," § 343(k); if it does not properly identify nutrition information, for example, serving size, number of servings, calories, and certain nutrients, § 343(q); or if it contains improper "nutrition levels and health related claims," § 343(r) ("nutrient content claims").

The NLEA also "amended the FDCA by adding [21 U.S.C. § 343–1(a),] an express preemption provision." *Lockwood*, 597 F.Supp.2d at 1030. Section 343–1(a) provides in relevant part that:

> [N]o State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce—
>
> . . .
>
> (3) any requirement for the labeling of food of the type required by section . . . 343(d) [misleading container], 343(f) [prominence of information on label], 343(h) [representations as to standards of quality and fill of container], . . . or 343(k) [artificial flavoring, artificial coloring, or chemical preservatives] of this title *that is not identical* to the requirement of such section
>
> . . .

> (4) any requirement for nutrition labeling of food *that is not identical* to the requirement of section 343(q) [nutrition information] of this title
>
> . . .
>
> (5) any requirement respecting any claim of the type described in section 343(r)(1) [nutrient content claims] of this title, made in the label or labeling of food *that is not identical* to the requirement of section 343(r) of this title. . . .

■ 21 U.S.C. § 343–1(a)(3)–(5) (emphases added). The express preemption provisions "reach[ ] beyond positive enactments like statutes and regulations, to embrace common-law duties and judge-made rules." *Chacanaca*, 752 F.Supp.2d at 1118 (citing *Bates v. Dow Agrosciences, LLC*, 544 U.S. 431, 443, 125 S.Ct. 1788, 161 L.Ed.2d 687 (2005)). The NLEA, however, does not "preempt any provision of State law" not "expressly preempted under [21 U.S.C. § 343–1(a) ]." *Id.* (quoting Pub.L. No. 101–535, § 6(c)(1), 104 Stat. 2353, 2364).

**B. California State Laws**

California's Sherman Laws adopt the federal labeling requirements as the food labeling requirements of the state. Cal. Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state."). In addition to this blanket provision, the Sherman Laws specifically adopt certain provisions that mirror or incorporate by reference the FDCA and NLEA food labeling and packing requirements, including the following provisions that, *inter alia*, form the basis for the "unlawful" prong of plaintiff's UCL claims:

> Any food is misbranded if its labeling is false or misleading in any particular, *id.* § 110660;

Any food is *misbranded if its labeling does not conform with the requirements for nutrition labeling set forth in Section 403(q) (21 U.S.C. Sec. 343(q)) of the federal act and the regulations adopted pursuant thereto, id.* § 110665 (emphasis added);

Any food is *misbranded if its labeling does not conform with the requirements for nutrient content or health claims set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulations adopted pursuant thereto, id.* § 110670 (emphasis added);

Any food is misbranded if any word, statement, or other information required pursuant to this part to appear on the label or labeling is not prominently placed upon the label or labeling with conspicuousness, as compared with other words, statements, designs, or devices in the labeling and in terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use, *id.* § 110705;

Any food is misbranded if it purports to be, or is represented, for special dietary uses . . . and its label does not bear information concerning any vitamin or mineral content, or other dietary property as the department prescribes, by regulation, as necessary to fully inform purchasers as to the *food's* value for that use, *id.* § 110735; and

Any food is misbranded if it bears or contains any artificial flavoring, artificial coloring, or chemical preservative, unless its labeling states that fact. Exemptions may be established by the department, *id.* § 110740.

See SAC ¶¶ 49, 187–208.

### C. The Products and Labels at Issue on the Second Motion to Dismiss

The labels primarily at issue in defendants' second motion to dismiss are: (1) the "natural lemon [lemondade] flavor" claims on the Crystal Light products; and (2) the nutrient content claims "good source" and "wholesome" on Planter's Nut-trition Wholesome Nut Mix; and (3) the fat-related nutrient content claims on Kraft's Mexican Style Four Cheese Blend. The issue is whether plaintiff has cured the pleading to sufficiently allege a violation of the applicable FDA regulations that would render these labels unlawful and misleading to a reasonable consumer.

Plaintiff also raises a host of new claims with respect to "essentially identical" or "similar" packaging and labels on products allegedly purchased by other class members, including:

(1) all Trident sugarless gum flavors ("essentially identical"), SAC ¶ 224;

(2) other lines of Trident gum ("similar"), *id.*;

(3) all Dentyne Ice and Dentyne Fire sugarless gum flavors ("essentially identical"), *id.* ¶ 225;

(4) all varieties of defendants' Back to Nature cookies, graham crackers, and granola with the "natural" or "evaporated cane juice" claims ("similar"), *id.* ¶¶ 226–27;

(5) all original Capri Sun flavors (all "share a uniform size and shape [and] on casual inspection, the only obvious difference between them is their flavor, and all flavors bear the same challenged label"), *id.* ¶ 228;

(6) all Capri–Sun Sunrise flavors ("essentially the same" packaging as the original Capri–Sun flavors and "the same challenged label"), *id.*;

(7) all Capri–Sun Roarn' Waters flavors ("substantially similar" packaging and challenged label), *id.*;

(8) all varieties of Planters Nut-trition line ("while the nutrient content claims may vary, all make the prominent and explicit 'healthy' claims" without the required disclosure statement on the front panel), *id.* ¶ 229;

(9) all Country Time lemonade products ("similar packages" and the "same label"), *id.* ¶ 230;

(10) all Stovetop Stuffing varieties ("similar packaging" and the same slack fill), *id.* ¶ 231;

(11) all Jell–O Sugar Free flavors ("similar packaging" and the same slack fill), *id.* ¶ 232;

(12) all Crystal Light products bearing the "natural and other natural flavor labels" (all "share a uniform size and shape [and] on casual inspection, the only obvious difference between them is their flavor, and all flavors bear the same challenged label"), *id.* ¶ 233;

(13) all Kraft cheese varieties bearing the "natural cheese" label ("similar packaging"), *id.* ¶ 234;

(14) all varieties of defendants' Back to Nature Cookies ("the only obvious difference between them is their flavor, and all flavors bear the same challenged label"), *id.* ¶ 235.

Finally, there is an issue whether claims based on statements plaintiff allegedly saw only on defendants' website are pled with sufficient particularity.

## II. ANALYSIS

### A. Legal Standard

"After the pleadings are closed[,] ... a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). When considering a motion for judgment on the pleadings, the court takes all factual allegations in the complaint as true and construes them in a light most favorable to the plaintiff. *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 783 (9th Cir. 2012). To survive a motion to dismiss for failure to state a claim, the facts pled need only give rise to "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "However, this principle is inapplicable to legal conclusions; 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,' are not taken as true." *Delacruz v. Cytosport, Inc.*, No 11–3532, 2012 WL 2563857, at *5 (N.D.Cal. June 28, 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

### B. Judicial Notice

The court takes judicial notice of exhibits 1–6, filed by defendants in support of this motion. Dkt. No. 57. Exhibits 1–6 depict the packaging of the products plaintiff challenged in the SAC. *See Bronson v. Johnson & Johnson, Inc.*, No. 12–4104, 2013 WL 1629191, at *1 n. 1 (N.D.Cal. Apr. 16, 2013) (explaining that judicial notice of the food product packaging relied upon in the complaint is appropriate and does not convert a motion to dismiss into a motion for summary judgment).

Plaintiff asks the court to take judicial notice of three public documents in other cases that demonstrate the FDA's position on the issue of whether the FDCA preempts a private action to enforce state requirements that are identical to the FDCA. Dkt. No. 60. The court need not take judicial notice of these documents but, to the extent the court finds them helpful or persuasive, the court will consider them as it would consider any other published authority. *See Feezor v. Excel Stockton, LLC.*, No. 12–0156, 2013 WL 2485623, at *3 (E.D.Cal. June 10, 2013) ("As these materials are not themselves facts, they are not subject to judicial notice.").

## C. Plaintiff's Amended UCL Claims Based on "Unlawful" Labels

Defendants move to dismiss the amended claims on the grounds that: (1) they are still expressly preempted by 21 U.S.C. § 343–1(a) because the product labels comply with FDA regulations; (2) they are impliedly preempted because they are based solely on alleged violations of the Federal Food, Drug, and Cosmetic Act ("FDCA") and conflict with the FDCA's enforcement scheme; (3) the FDA has primary jurisdiction over the claims because the FDA can better determine the technical issues of font size and placement; and (4) the labels are unlikely to deceive a reasonable consumer, and therefore plaintiff has no standing. Defendants also ask the court to dismiss the new claims based on products that plaintiff did not herself purchase. Finally, defendants ask the court to dismiss plaintiff's claims based on certain statements plaintiff allegedly viewed on defendants' website only.

### 1. Express preemption

Defendants argue that plaintiff's amended UCL claims are preempted under 21 U.S.C. § 343–1, the FDCA's express preemption provision. According to defendants, because these food labels at issue are in compliance or, at least in substantial compliance, with federal law, a judgment in plaintiff's favor would impose different or additional requirements than those of the FDCA and NLEA, and thus the claims are expressly preempted. Plaintiff counters that these labels actually violate existing FDA policies, and thus, plaintiff seeks to impose nothing more than what the FDA already requires.

### (a) "Natural lemon [lemonade] flavor" claims on the purchased Crystal Light products

█ Plaintiff first claims that the purchased Crystal Light products contain artificial flavors which "simulate, resemble, or reinforce the characterizing flavor, including sodium citrate and potassium citrate." SAC ¶ 66. Therefore, plaintiff argues, the product is not eligible to bear the "natural flavors" label under 21 C.F.R. § 101.22(i)(2) ("[I]f the food contains any artificial flavor which simulates, resembles or reinforces the characterizing flavor ... the name of the characterizing flavor shall be accompanied by the word(s) 'artificial' or 'artificially flavored.' "). Neither party disputes the fact that the purchased Crystal Light products do, in fact, contain a natural lemon flavor within the meaning of 21 C.F.R. § 101.22(a)(3). The issue then, is whether the product contains *additional* artificial flavors that simulate, resemble, or reinforce the natural lemon flavor. The court concludes that the product does not contain any such additional artificial flavors.

In the SAC, plaintiff only points to two specific ingredients which she alleges are "artificial" flavors: potassium citrate and sodium citrate. SAC ¶ 66. While these substances may be artificial *ingredients*, nothing in the FDA regulations suggests that these ingredients are *flavors*, artificial or otherwise. Potassium citrate is listed by the FDA as being used in the pasteurization of certain cheese products (as emulsifying agents), *see* 21 C.F.R. §§ 133.169, 133.171, 133.179, and sodium citrate is described by the regulations as an artificial sweetener in jams and preserves, *see* 21 C.F.R. §§ 150.161. Neither product, however, is included in the FDA's list of artificial flavors. *See* 21 C.F.R. § 172.515(b), 182.60; *see also Viggiano v. Hansen Natural Corp.*, No. 12–10747, 944 F.Supp.2d 877, 888–89, 2013 WL 2005430, at *7 (C.D.Cal. May 13, 2013) (finding that sucralose was not a flavor when FDA regulations listed it only as a sweetener and did

not list it as an artificial flavor). A bare, conclusory assertion that these two ingredients "simulate[ ], resemble[ ], or reinforce[ ] the characterizing [lemon] flavor," without any basis for such a conclusion in the FDA regulations or otherwise, is insufficient to state a claim that these labels violate 21 C.F.R. § 101.22(i)(2). *See Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" (internal quotation omitted)). Since the Crystal Light products refer specifically to the natural lemon flavor, rather than natural ingredients generally, the fact that the product contains some allegedly unnatural substances like potassium citrate and sodium citrate does not render the label false or misleading under FDA guidelines.[1] *See, e.g., Viggiano*, 944 F.Supp.2d at 889, 2013 WL 2005430 at *7 ("Hansen's soda can refer specifically to natural *flavors* ... the fact that [some ingredients] are allegedly unnatural does not render Hansen's 'all natural flavors' label false or misleading under FDA guidelines."). The court also concludes that the "natural lemon [lemonade] flavor" claims are in compliance with FDA regulations concerning font size and placement because the word "flavor" appears to be printed in at least 1/2 the font size of the phrase "natural lemon [lemonade]." *See* 21 C.F.R. § 101.22(i)(1)(iii). Because the Crystal Light labels are therefore wholly in compliance with FDA regulations, they are expressly preempted by the FDCA.

■ Allowing plaintiff's state-law claim to proceed would mean reading California's Sherman Laws to impose an additional or different regulatory requirement on defendants' product, in violation of the FDCA's express preemption provision. *See Kanter v. Warner–Lambert Co.*, 99 Cal.App.4th 780, 795, 122 Cal.Rptr.2d 72 (2002) ("[W]hen a state-law claim, however couched, would effectively require a manufacturer to include additional or different information on a federally approved label, it is preempted."); *Chacanaca v. Quaker Oats Co.*, 752 F.Supp.2d 1111, 1121–23 (N.D.Cal.2010) (finding express preemption of UCL and other state-law claims that sought to impose labeling requirements that were not identical to FDA regulations regarding the use of the terms "0g Trans Fat" and "good source" of calcium and fiber). Thus, plaintiff's claims against the purchased Crystal Light products are expressly preempted. Because the defendants were unable to cure the claims, and any further attempts would be futile, this dismissal is with prejudice.

**(b) Nutrient content claims "good source" and "wholesome" on Planter's Nut-trition Wholesome Nut Mix**

■ Plaintiff next alleges that defendants' nut mix product is misbranded because the disclosure statement concerning the nutrient content claims ("good source of 5 vitamins and minerals" and "wholesome") does not comply with FDA regulations concerning typeface and placement. SAC ¶ 133. While the disclosure is indeed present on the Nutrition Facts panel on the *back* of the product, it does not appear adjacent to the nutrient content claims placed on the *front* of the label, and is thus in technical violation of 21 C.F.R. § 101.13(4)(ii) ("[T]he disclosure statement

---

**1.** The court is not persuaded that the "natural lemon [lemonade]" label can be viewed in isolation of the word flavor immediately below, which is in compliance with the FDA regulation pertaining to "natural flavor" claims. The court rejects plaintiff's attempt to characterize these claims as "all natural" claims in isolation of the flavor claims.

shall be immediately adjacent to the nutrient content claim and may have no intervening material.... If the nutrient content claim appears on more than one panel of the label, the disclosure statement shall be adjacent to the claim on each panel."). In addition to violating the FDA's placement requirement, the Ninth Circuit has also held that "reasonable consumers" would not necessarily look beyond the front of the packaging to discover the requisite disclosure statement. *See Williams v. Gerber Prods. Co.,* 552 F.3d 934, 939 (9th Cir.2008) ("[W]e disagree ... that reasonable consumers should be asked to look beyond misleading representations on the front of the box to discover the truth."). Thus, the disclosure statement is potentially misleading based both on the FDA's "objective criteria," *see Delacruz,* 2012 WL 2563857, at *18 ("The FDA regulations may lend objective criteria by which to determine whether certain words and phrases used on the labels are misleading."), and under the reasoning in *Williams.*

█ Courts have found that where plaintiffs are only seeking to impose state law requirements that are *identical* to federal regulations, there is no express preemption under the FDCA. *See, e.g., Wilson v. Frito–Lay N. Am., Inc.,* No. 12–1586, 2013 WL 1320468, at *7 (N.D.Cal. Apr. 1, 2013); *Brazil v. Dole Food Co.,* No. 12–01831, 935 F.Supp.2d 947, 953, 2013 WL 1209955, at *4 (N.D.Cal. Mar. 25, 2013); *Lanovaz v. Twinings N. Am., Inc.,* No. 12–02646, 2013 WL 675929, at *3 (N.D.Cal. Feb. 25, 2013); *Kosta v. Del Monte Corp.,* 12–01722, 2013 WL 2147413, at *7 (N.D.Cal. May 15, 2013). Since California's Sherman Laws fully adopt federal food labeling law, allowing plaintiff's state law UCL claims to proceed based on the "unlawfulness" of the nut mix label imposes no other requirement than what FDA

regulations already require. Whether or not defendants' label is also *misleading* for the purposes of the UCL is another issue discussed later in this order, but for the purposes of preemption, plaintiff's claim is not expressly preempted and cannot be dismissed on that basis.

### (c) Fat-related nutrient content claims on Kraft's Mexican Style Four Cheese Blend

█ The same analysis applies to the fat-related nutrient content claims on defendants' cheese product. Plaintiff has cured the pleadings and now sufficiently alleges that defendants' cheese product is in technical violation of FDA regulations concerning the size and placement of the requisite disclosure statement. SAC ¶ 134; *see* 21 C.F.R. § 101.13(h)(4)(i). While the label does bear the requisite disclosure statement, it is not immediately adjacent to the claim at the top of the label, and is arguably not in "bold or easily legible typeface or print" as required by the regulation. The fact that this label does not comply with FDA regulations precludes express preemption because, as explained, allowing plaintiff's claim to proceed imposes no other requirements than what the FDA and applicable state Sherman Laws already require. Therefore, plaintiff's claim regarding the fat-related nutrient content claim on the cheese product cannot be dismissed on the basis of express preemption.

### 2. Implied Preemption

Defendants also argue that plaintiff's claims are impliedly preempted because they are based solely on alleged violations of the FDCA, and conflict with the FDCA's enforcement scheme, citing the Ninth Circuit's recent decision in *Perez v. Nidek,* 711 F.3d 1109 (9th Cir.2013). Defendants argue that, under *Perez,* it is the

**1044**

FDA, not private plaintiffs, that must be responsible for enforcing FDA regulations, and that plaintiff's claims therefore do not fit through the "narrow gap" through which a state law claim must squeeze to avoid implied preemption. Reply 9, Dkt. No. 63.

In *Perez,* plaintiff brought several state-law claims against a group of physicians for failing to disclose that a laser medical device used on the plaintiff had not received FDA pre-approval. *Perez,* 711 F.3d at 1112. The medical device at issue was subject to device-specific requirements under the FDA's pre-market approval regime. *Id.* at 1118. The Ninth Circuit held that plaintiff's state-law claims were expressly preempted because they depended on a state law requirement "in addition to those federal requirements ... that physicians and medical device companies *must affirmatively tell patients* when medical devices have not been approved for a certain use." *Id.* at 1118–19 (emphasis added). Because FDA regulations did not specifically require this disclosure, the circuit court held that allowing plaintiff's state-law claims to proceed would have meant imposing an additional regulatory requirement on the defendants, which was expressly precluded by the preemption provision of the FDCA. *Id.* at 1119.

However, the Ninth Circuit went on to note that plaintiff's claims were also *impliedly* preempted, i.e., would be precluded even absent an express preemption provision in the FDCA, because allowing the state claims to proceed would have undermined the FDCA's enforcement scheme. *Id.* at 1119. This is the basis for defendants' second preemption argument. But the Ninth Circuit's conclusion on this issue was still based on the fact that plaintiff's state-law claims would have imposed an additional disclosure requirement on the defendants that was not required by feder-

al regulations. Because the FDA was still in the midst of investigating whether or not the failure to disclose actually constituted a violation of the FDCA (and the FDA has primary responsibility for enforcing the FDCA), the circuit court held that allowing plaintiff's state-law fraud-by-omissions claims to proceed could have potentially undermined the FDA's enforcement authority if the FDA reached a different conclusion. *Id.* at 1120.

However, nowhere in its opinion did the Ninth Circuit argue that allowing plaintiffs to bring state-law claims based on state laws that *parallel* federal requirements would constitute "private enforcement" of FDA regulations that would conflict with the FDA's regulatory authority. In fact, it noted the opposite: state-law claims are not impliedly preempted "insofar as the state-law duty parallels a federal-law duty." *Id.* at 1118 (internal citations omitted). While the Ninth Circuit was speaking only in the context of the Medical Devices Amendments to the FDCA, lower courts, including this district, have repeatedly extended this reasoning to violations of FDA food labeling regulations more generally if there is a regulation directly on point. *See, e.g., Wilson,* 2013 WL 1320468, at *7; *Brazil,* 935 F.Supp.2d at 953, 2013 WL 1209955, at *4.

■ Unlike the situation in *Perez,* here, plaintiff's claims rest entirely on violations of California's Sherman Law counterparts that *parallel* federal requirements, and which do not require this court to create new requirements or interpret the scope of currently existing regulations. Here, the court need only determine whether defendants' labels actually comply with existing and well-understood FDA regulations, "a determination that would not risk undercutting the FDA's expert judgments and authority." *Astiana v. Hain Celestial Grp.,* 905 F.Supp.2d 1013, 1016–17

(N.D.Cal.2012) (internal citations omitted). The court must "start from a presumption against preemption." *Kosta*, 2013 WL 2147413, at *9. Where, as here, there is no conflict between state and federal law that might interfere with FDA regulatory authority, the court declines to find that plaintiff's claims are impliedly preempted. The motion to dismiss on the basis of implied preemption is therefore denied.

### 3. The primary jurisdiction doctrine does not apply to the remaining claims

■■■■■ Similar reasoning applies to defendants' argument that this court should dismiss on the basis of primary jurisdiction. "The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir.2008). The doctrine "is committed to the sound discretion of the court when 'protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme.'" *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir.2002) (quoting *United States v. General Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987)). Courts consider the following non-exhaustive factors in deciding whether the doctrine of primary jurisdiction applies: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Id.* The doctrine "is to be used only if a claim 'requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has

committed to a regulatory agency.'" *Time Warner*, 523 F.3d at 1114 (quoting *Brown v. MCI WorldCom Network Servs.*, 277 F.3d 1166, 1172 (9th Cir.2002)).

■■■■ As previously noted, plaintiff's case does not require this court to determine difficult issues of first impression better left to the FDA's expertise, but instead only requires the application of well-understood FDA regulations directly on point. "[T]he FDA's expertise ... is not necessary to determine whether the labels are misleading, [and the] reasonable consumer determination and other issues involved in [this] lawsuit are within the expertise of the courts to resolve." *Delacruz*, 2012 WL 2563857, at *10; *see also Brazil*, 935 F.Supp.2d at 959–61, 2013 WL 1209955, at *10–11 (holding that primary jurisdiction did not apply to claims of violation of FDA regulations and guidance concerning "all natural," fresh, antioxidant, and other nutrient claims); *Astiana v. Ben & Jerry's Homemade, Inc.*, No. 10–4387, 2011 WL 2111796, at *15 (N.D.Cal. May 26, 2011) (holding that primary jurisdiction did not apply where the court had to determine whether defendant's "All Natural" claims were misleading); *Chacanaca*, 752 F.Supp.2d at 1124 ("[Plaintiffs] assert that defendant has violated FDA regulations and marketed a product that could mislead a reasonable consumer. This is a question courts are well-equipped to handle."). Defendants' motion to dismiss on the basis of primary jurisdiction is denied.

### 4. Standing

■■■■ Finally, defendants argue that plaintiff's remaining claims should be dismissed because the labels, even if in technical violation of FDA regulations, are unlikely to deceive a reasonable consumer, and plaintiff therefore has no standing. According to defendants, because plaintiff

could not have *known* about the FDA's regulations regarding the font size and placement of the disclosure statements, she could not have relied on or been deceived by the alleged violations.

■■■ In order to bring a claim under the UCL or FAL, a plaintiff must establish: (1) "a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*"; and (2) "that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 322, 120 Cal.Rptr.3d 741, 246 P.3d 877 (2011) (emphases in original). In order to satisfy the causation prong of the standing requirement, plaintiff must demonstrate "a causal connection or reliance on the alleged misrepresentation." *Id.* at 326, 120 Cal.Rptr.3d 741, 246 P.3d 877 (quotation omitted).

■■■ The court disagrees with defendants that a plaintiff would be required to *know* of the particular FDA or state law regulations in order for violations thereof to cause an *economic* injury. Plaintiff's claim is essentially that, because defendants' labels did not comply with state and federal requirements regarding the font-size and placement of the disclosure statement, she could not see or did not understand the disclosures, and therefore was misled by the unlawful packaging and purchased the product based thereon. SAC ¶¶ 79, 212–13. Plaintiff satisfies the UCL and FAL's standing requirements: the court has already determined that defen-

dants' products are technically misbranded, plaintiff alleges she was misled as a result of the misbranding and has suffered economic injury because she purchased a product she otherwise would not have. As the court previously held with respect to defendants' first motion to dismiss ("1st MTD Order"), "[t]he alleged purchase of a product that plaintiff would not otherwise have purchased but for the alleged unlawful label is sufficient to establish an economic injury-in-fact for plaintiff's unfair competition claims." 1st MTD Order 7, Dkt. No. 49 (citing cases).[2]

### D. Products Plaintiff Did Not Purchase

■■■■■■■ further argue that plaintiff lacks standing to sue based on products that she did not herself purchase. See 1st MTD Order 8. The court previously held in this case that there can be no requisite *pecuniary* injury where plaintiff did not herself purchase the product at issue. *See id.* ("The alleged injury in this case is that plaintiff 'based and justified the decision *to purchase* [d]efendants' products in substantial part on [d]efendants' package labeling, packaging and website claims" and *"would have foregone purchasing [d]efendants' products* and bought other products readily available at a lower price.") [S]AC ¶ [213] (emphases added).

In *Lanovaz v. Twinings*, this court recently extended plaintiff's standing to "products . . . nearly identical to the claims for the purchased product." Order at 4, No. 12–2646, Dkt. No. 60. In *Lano-*

**2.** Although defendant's standing argument is tailored to the "unlawful" nutrient content claims on the nut-mix products, with respect to defendants' labels that are not technically "unlawful" but nonetheless allegedly deceptive or misleading, courts generally recognize that whether a label is likely to deceive an ordinary consumer is "a question of fact not

appropriate for a decision on demurrer." *Williams*, 552 F.3d at 939; 1st MTD Order 7 (citing cases). "It is a 'rare situation' where granting a motion to dismiss claims under the UCL is appropriate." *In re Ferrero Litig.*, 794 F.Supp.2d 1107, 1115 (S.D.Cal.2011) (quoting *Williams*, 552 F.3d at 939).

*vaz,* there was sufficient detail in the amended complaint to establish that the antioxidant ingredient in 51 of the 53 tea products at issue was the same. *Id.* In addition, the labels describing that same antioxidant in those 51 products were identical. *Id.* With respect to all products that only bear "similar" packaging or labels (these are: Back to Nature cookies, graham crackers, and granola products; the Planters Nut-rition line of products; Kraft cheese products; Country Time lemonade products; Jell–O sugar free products; Stovetop stuffing products; and certain sugar free gum product lines) the court finds the allegations of "similar packaging" insufficient to meet the standing requirement. With respect to the non-purchased products bearing packaging and labels that are allegedly the same, essentially identical, or substantially similar (these are the Capri Sun and Crystal Light products), the SAC provides insufficient detail regarding the non-purchased products' nutritional contents and ingredients to allow the court to find standing under the reasoning in *Lanovaz.* However, with respect only to the regular Trident sugar free gum line with "essentially identical" packaging, *see* SAC ¶ 224, and the Dentyne Ice and Dentyne Fire sugarless gum lines with "essentially identical" packaging, *see* SAC ¶ 225, the court is satisfied that plaintiff has standing to bring these claims based on the impermissible "sugar free" labels. Other than these specific gum lines, however, the court dismisses the remainder of plaintiff's newly added claims based on products plaintiff herself did not purchase, without leave to amend.

### E. Claims Based on Statements Only on Defendants' Website

██ Defendants allege that the SAC does not sufficiently state a claim based on the "excellent source" and "healthy" and "wholesome" claims on their website.

Defs.' Mot. 11–13. With respect to the "excellent source" statement on the website allegedly directed to defendants' Capri Sun products, the court finds that the SAC does not sufficiently plead an "excellent source" claim with respect to any purchased product. Rather, the SAC only generally alleges that "[d]efendants made an impermissible 'excellent source' claim on their website regarding Capri Sun *products.*" SAC ¶ 228 (emphasis added). Plaintiff fails to plead specific reliance on this particular website statement with respect to any purchased product. Accordingly, the court dismisses the "excellent source" website claims with leave to amend. The court dismisses the "healthy" and "wholesome" website claims for similar reasons. The SAC generally alleges that these claims were present on defendants' website but does not sufficiently plead reliance on these specific aspects of the website when purchasing any particular product. *See* SAC ¶ 245 ("Plaintiff saw such healthy and wholesome claims which influence their [sic] decision to purchase [d]efendants' *products.*" (emphasis added)).

### III. ORDER

For the foregoing reasons, the court GRANTS defendants' motion to dismiss with respect to: (1) plaintiff's "natural lemon [lemonade] flavor" claims with prejudice, (2) the majority of the products not-purchased by plaintiff (as specified above) with prejudice, and (3) the "excellent source" and "healthy" and "wholesome" claims on the website with thirty days leave to amend. The court DENIES defendant's motion to dismiss with respect to the nutrient content claims on the purchased Planters Nut-rition product and Kraft Mexican Style Four Cheese blend.