ERICKSON, Circuit Judge.
 

 Charter Communications is a provider of video, internet, and voice communications services. This case arose when Charter underwent a corporate reorganization in order to segregate its Voice over Internet Protocol ("VoIP") services from its regulated wholesale telecommunications services. As part of the reorganization, Charter moved its VoIP accounts from "Charter Fiberlink" to a newly created affiliate named "Charter Advanced." This led the Minnesota Department of Commerce to lodge a complaint with the Minnesota Public Utilities Commission ("MPUC") alleging that Charter had violated various state laws. Charter responded that state regulation was preempted by the Telecommunications Act of 1996. The MPUC ruled against Charter.
 

 Charter commenced an action in the United States District Court for the District of Minnesota seeking: 1) declaratory relief finding that state regulation is preempted, and 2) injunctive relief prohibiting Defendants from enforcing regulation of its VoIP services. The district court
 
 [1]
 
 denied defendants' motion to dismiss and allowed discovery to proceed. Following competing motions for summary judgment, the district court ruled that Charter's VoIP service is an "information service" under the Telecommunications Act and that state regulation of Charter's VoIP services was therefore preempted. Because we agree with the district court, we affirm.
 

 I. Background
 

 Spectrum Voice is a VoIP service operated by Charter Advanced. Spectrum Voice offers a voice calling feature that allows subscribers to exchange calls with traditional telephones, transmitting voice signals as Internet Protocol ("IP") data packets via a broadband internet connection. Spectrum Voice is an "interconnected" VoIP service because of its ability to interface with traditional or legacy telephone operations. It is also a "fixed" service because it is tethered to the user's home.
 

 Spectrum Voice subscribers receive an embedded Multimedia Terminal Adapter ("eMTA") from Charter Advanced. The eMTA is combined with a modem (for broadband internet access service) into a single device. The eMTA transforms voice calls from analog electrical signals into IP "packets," which are then carried on Charter's network. Under FCC classifications for hardware, the eMTA is considered Customer Premises Equipment ("CPE").
 

 In order to facilitate Spectrum Voice's interconnected VoIP service, Charter must interconnect with traditional providers. Traditional telephone networks (collectively known as the public switched telephone network or "PSTN") utilize "circuit switching" technology, which establishes a dedicated pathway for the duration of a call. A technique called Time Division Multiplexing ("TDM") allows multiple circuit-switched calls to share the same line.
 

 As the district court stated, "[t]he eMTA alters the format of voice calls between an analog electrical signal-as transmitted by the customer's handset-and the IP data packets transmitted over Charter Advanced's cable network ... When a Charter Advanced customer calls or receives a call from a subscriber of a traditional telecommunications carrier, the call must be converted between IP and TDM."
 
 Charter Advanced Servs. (MN), LLC v. Lange
 
 ,
 
 259 F.Supp.3d 980
 
 , 982 (D. Minn. 2017). This process is known as "protocol conversion." Charter accomplishes the conversion by routing IP-TDM calls through a "Media Gateway" on Charter Advanced's side of its connection with a TDM-based network.
 

 Spectrum Voice provides customers access to additional features. For example, the service offers: 1) a web portal to access voicemails as digital files, convert voicemails to text, and forward them via email; 2) the ability to display caller ID info on connected cable televisions; 3) a "softphone" feature to access Spectrum Voice via a tablet or smartphone app; and other features.
 

 Charter moved its Spectrum Voice offerings from Charter Fiberlink to Charter Advanced for the purpose of decreasing its state regulatory burden. Under the Telecommunications Act of 1996, a "telecommunications service" is "the offering of telecommunications for a fee directly to the public, or to such classes of users as to be effectively available directly to the public, regardless of the facilities used."
 
 47 U.S.C. § 153
 
 (53). An "information service," by contrast, is "the offering of a capability for generating, acquiring, storing, transforming, processing, retrieving, utilizing, or making available information via telecommunications, ... but does not include any use of any such capability for the management, control, or operation of a telecommunications system or the management of a telecommunications service."
 
 47 U.S.C. § 153
 
 (24).
 

 How a service is classified affects a state's ability to regulate the service. Telecommunications services are generally subject to "dual state and federal regulation."
 
 See
 

 Louisiana Pub. Serv. Comm'n v. FCC
 
 ,
 
 476 U.S. 355
 
 , 375,
 
 106 S.Ct. 1890
 
 ,
 
 90 L.Ed.2d 369
 
 (1986). By contrast, "any state regulation of an information service conflicts with the federal policy of nonregulation," so that such regulation is preempted by federal law.
 
 See
 

 Minnesota Pub. Utilities Comm'n v. FCC
 
 ,
 
 483 F.3d 570
 
 , 580 (8th Cir. 2007) ;
 
 see
 

 also
 

 47 C.F.R. § 64.702
 
 . The FCC has so far declined to classify VoIP services as either information or telecommunications services, despite repeated opportunities to do so.
 
 [2]
 

 See
 

 Clark v. Time Warner Cable
 
 ,
 
 523 F.3d 1110
 
 , 1113 (9th Cir. 2008) (footnotes omitted) (quoting
 
 In re IP-Enabled Services
 
 , 19 F.C.C.R. 4863, 4880-81 ¶¶ 26-27, 4886 ¶ 35 (2004) ) (explaining that the FCC "solicited comment on whether VoIP services should be classified as 'telecommunications services' or 'information services' under the Act").
 

 The MPUC sought to regulate Charter Advanced by asserting that VoIP is a "telecommunications service" as defined by the Act. Charter responded by filing an action in the district court arguing that Spectrum Voice is an "information service" under the Act, requiring preemption of state regulation. In the absence of direct guidance from the FCC explicitly classifying VoIP services, the district court interpreted the Act with reference to prior FCC orders, and concluded that Spectrum Voice was an information service. The MPUC now appeals.
 

 II. Discussion
 

 We review the district court's grant of summary judgment
 
 de novo
 
 , "viewing all evidence and drawing all reasonable inferences in the light most favorable to" the nonmovant.
 
 Riddle v. Riepe
 
 ,
 
 866 F.3d 943
 
 , 946 (8th Cir. 2017) (quoting
 
 Helmig v. Fowler
 
 ,
 
 828 F.3d 755
 
 , 760 (8th Cir. 2016) ). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).
 

 As we have noted, "any state regulation of an information service conflicts with the federal policy of nonregulation."
 
 Minnesota Pub. Utilities Comm'n v. FCC
 
 ,
 
 483 F.3d 570
 
 , 580 (8th Cir. 2007). We may therefore affirm the district court if Charter's VoIP offerings are an information service under the Act.
 

 We conclude that the VoIP technology used by Charter Spectrum is an "information service" under the Act.
 
 [3]
 
 As the district court put it, "the touchstone of the information services inquiry is whether Spectrum Voice acts on the consumer's information-here a phone call-in such a way as to 'transform' that information."
 
 259 F.Supp.3d at
 
 987 ;
 
 see
 

 47 U.S.C. § 153
 
 (24). IP-TDM calls involve just such a transformation. For those calls, because information enters Charter's network "in one format (either IP or TDM, depending on who originated the call) and leaves in another, its system offers 'net' protocol conversion, which the FCC has defined as occurring when 'an end-user [can] send information into a network in one protocol and have it exit the network in a different protocol.' "
 
 See
 

 id.
 

 at 986
 
 (quoting
 
 Implementation of the Non-Accounting Safeguards of Sections 271 and 272 of the Communications Act of 1934, As Amended
 
 , 11 F.C.C.R. 21905, 21956 ¶ 104 (1996) ("Non-Accounting Safeguards Order") ). While the Non-Accounting Safeguards Order did not specifically discuss VoIP technology, its rationale suggests that Spectrum Voice's protocol conversion is a "transformation" of the relevant communications.
 
 [4]
 

 See
 

 Non-Accounting Safeguards Order
 
 , 11 F.C.C.R. at 21956 ¶ 104 (1996) (explaining that "conversion and protocol processing services are information services under the 1996 Act");
 
 see
 

 also
 

 Vonage Holdings Corp. v. Minnesota Pub. Utilities Comm'n
 
 ,
 
 290 F.Supp.2d 993
 
 , 999 (D. Minn. 2003) (citing
 
 47 C.F.R. § 64.702
 
 (a) ) (explaining that the "process of transmitting customer calls over the Internet require[d]" a VoIP provider to " 'act on' the format and protocol of the information" and finding that such providers use telecommunications services, rather than providing them). Spectrum Voice's service is an information service because it "mak[es] available information via telecommunications" by providing the capability to transform that information through net protocol conversion.
 
 Cf.
 

 Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.
 
 ,
 
 545 U.S. 967
 
 , 988,
 
 125 S.Ct. 2688
 
 ,
 
 162 L.Ed.2d 820
 
 (2005) (explaining that "all information-service providers ... use 'telecommunications' to provide consumers with [their] service").
 

 We briefly address the Act's carve-out from the definition of "information service." The definition of "information service" excludes services that comprise a "capability for the management, control, or operation of a telecommunications system or the management of a telecommunications service."
 
 47 U.S.C. § 153
 
 (24). The FCC has further defined this exception to include "(1) services 'involving communications between an end user and the network itself (e.g., for initiation, routing, and termination of calls) rather than between or among users;' (2) protocol processing 'in connection with the introduction of a new basic network technology (which requires protocol conversion to maintain compatibility with existing [CPE] )' and (3) services 'involving internetworking (conversions taking place solely within the carrier's network to facilitate provision of a basic network service, that result in no net conversion to the end user).' "
 
 259 F.Supp.3d at 988-89
 
 (quoting
 
 Non-Accounting Safeguards Order
 
 , 11 F.C.C.R. at 21957 ¶ 106 ).
 

 None of the exceptions alter our conclusion that Spectrum Voice is an information service. The first exception is inapplicable because the service at issue is "between or among users." The network protocol technology is an essential feature of Spectrum Voice's offerings, as the ability to call users of legacy telephony services via Spectrum Voice is a vital selling point for consumers. The second exception is also inapplicable. Spectrum Voice's service is not aimed at providing backwards compatibility for existing CPE. Instead, Spectrum Voice's customers must receive new CPE (the eMTA) to utilize its services. Finally, the "internetworking" exception does not apply. The FCC defines CPE as falling outside a carrier's network.
 
 See
 

 In re Federal-State Joint Board on Universal Service
 
 , 18 F.C.C.R. 10958, 10967 ¶ 18 (2003) (defining CPE as "equipment that falls on the customer side of the demarcation point between customer and network facilities"). As such, the eMTA is located outside of the carrier's network by definition. Since any conversion back into the original form of the information takes place outside of the network (in the eMTA), the "internetworking" exception is inapplicable.
 

 III. Conclusion
 

 We agree with the district court that Spectrum Voice is an "information service" under the Act. Preemption of state regulation of Spectrum Voice is therefore warranted. Accordingly, we affirm the district court's grant of summary judgment to Charter Advanced.
 

 The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.
 

 The FCC's amicus brief in this case is illustrative.
 
 See
 
 Brief of the FCC as Amicus Curiae Supporting Appellees at 13-15 ("[T]he agency has not yet resolved the overarching classification issue ... the agency has not needed to definitively resolve the overarching regulatory classification of ... VoIP service at this time.").
 

 We note that while the FCC would be able to announce a classification decision regarding VoIP, it has so far declined to do so.
 
 See
 
 ,
 
 e.g.
 
 ,
 
 USF-ICC Transformation Order
 
 , 26 F.C.C.R. 17663, 18013-14 ¶ 954 (2011) (explaining that "the Commission has not classified interconnected VoIP services or similar one-way services as 'telecommunications services' or 'information services' ") (footnote omitted). We sometimes stay our hand "while seeking the guidance of an administrative agency's perceived expertise" when resolving a question concerning a statute ordinarily interpreted by the agency.
 
 See
 

 Owner-Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc.
 
 ,
 
 192 F.3d 778
 
 , 785 (8th Cir. 1999) (discussing the doctrine of primary jurisdiction). Here the agency has "decline[d] to provide guidance" for well over a decade, so that we may, in our discretion, proceed "according to [our] own light."
 

 Id.
 

 (quoting
 
 Atchison, Topeka & Santa Fe Ry. v. Aircoach Transp. Ass'n
 
 ,
 
 253 F.2d 877
 
 , 886 (D.C. Cir. 1958) ).
 

 The FCC took the position in this case that none of "the various FCC authorities invoked by the district court" should be read to "definitively resolve" the regulatory classification of Charter's VoIP services.
 
 See
 
 Brief of the FCC as Amicus Curiae Supporting Appellees at 26-29. To be clear, we do not resolve the statutory question solely on the basis of those authorities-though like the FCC, we believe they "continue to provide important guidance on how to interpret and apply the Communications Act." Id. at 27.